**Fred FORD et al., Appellants,**

**v.**

**Freeda Ford HARLOW et vir, Appellees.**

**No. 17001.**

Court of Civil Appeals of Texas.

Fort Worth.

March 21, 1969.

Rehearing Denied April 18, 1969.

Marvin F. London, Bowie; Richard Owens, Fort Worth, for appellant Fred Ford.

Jack Lovette, Bowie; Nelson, Montgomery & Robertson, and Charles B. Russell, Wichita Falls, for appellants and appellees Freeda Ford Harlow et vir.

T. B. Coffield, Bowie; Ernest May, Fort Worth, for appellee The First National Bank of Bowie.

## OPINION

MASSEY, Chief Justice.

Simplified for purposes of description of issues and parties the suit may be considered as one by Freeda Ford Harlow and husband, as plaintiffs, against Fred Ford, defendant. Plaintiffs will be referred to in the singular, ordinarily meaning Freeda Ford Harlow. The First National Bank of Bowie will be referred to as the Bank.

February 7, 1961, the defendant borrowed the sum of $5,600.00 from the Bank. After borrowing such sum his total amount owing the Bank was $19,760.00 evidenced by notes. In connection with the $5,600.00 loan the defendant delivered to the Bank as a pledged security a note in the original sum of $15,660.00, dated June 22, 1960, in which he was payee. The note had been executed and delivered to defendant by one Randolph as part of the consideration for realty sold to him. There was security afforded the Bank by defendant on the amounts owing prior to the material date, but the collateral pledge agreement delivered to the Bank on February 7, 1961, along with note for $5,600.00, read in part as follows: "STATE OF TEXAS—COUNTY OF MONTAGUE: Having executed my note to The First National Bank of Bowie,

Texas, and having deposited and pledged with the said bank as collateral for the prompt payment at maturity of any and all notes now executed, or hereafter to be executed, together with any and other liability or liabilities of the undersigned as principal debtor or otherwise, due or to become due, or of any that may hereafter be contracted with the said bank, or its assigns, the following collateral, to-wit: Installment Vendors Lien note dated June 22, 1960— U. A. Randolph—in the amount of $15,660.-00 * * *.

"The holder of said note shall not be liable for failure to collect said collaterals, * * * and if this note, or any other liability of the undersigned be not paid at maturity, is hereby authorized, * * * to sell * * * the whole or any part of said collaterals, * * * to apply the residue of such proceeds to pay any or all of said liabilities as said holder shall deem proper, * * *.

"The said holder hereof shall be entitled *to collect any interest accruing upon,* or payments maturing on the principal, of said collateral, * * * and shall apply the proceeds as similarly provided above."

March 7, 1961, the defendant executed and gave to plaintiff writing assigning to her such $15,660.00 Randolph note which was being held by the Bank as collateral. The assignment read, in brief, as follows: "THE STATE OF TEXAS—COUNTY OF MONTAGUE—KNOW ALL MEN BY THESE PRESENTS: WHEREAS, by deed dated June 22, 1960, Fred Ford et ux conveyed to U. A. Randolph * * * and, WHEREAS, * * * part of the consideration therefor was the execution and delivery of a certain promissory vendors lien note for $15,660.00, dated June 22, 1960, payable in annual installments and bearing interest at the rate of 5% * * * and, WHEREAS, First National Bank of Bowie, Texas, now holds said note as collateral security on a note of Fred Ford in the sum of $5,600.00, but Ford is yet the legal owner of the same and the equita-

ble owner of the balance of the face of said note and now desires to sell, convey and assign the same to Freeda Ford; now, therefore KNOW ALL MEN * * * That I, Fred Ford, * * * do now sell, assign, transfer and convey unto Freeda Ford, her heirs and assigns, the said above described note and the lien reserved to secure the same in said deed, and covenant that there are no other transfers thereof other than the one above * * *." The assignment was filed for record on March 7, 1961.

June 12, 1961 the defendant received $2,-349.00 as a payment on principal and interest of the Randolph note. Delivery occurred at the Bank's premises and an official of the Bank computed the interest then due on the note. In behalf of, or at the direction of the defendant, the note was credited with the principal amount paid thereon. Upon waiver by the Bank of its right to receive such to apply on its indebtedness under provisions of the pledge agreement, and by its consent, the defendant pocketed the entire amount. The Bank's collateral upon the indebtedness owed it by defendant was reduced, but his indebtedness was not reduced.

March 20, 1962 the defendant executed a renewal note to the Bank, and at the same time delivered a chattel mortgage as security—covering certain cows, calves and bulls.

June 16, 1962 the defendant received $2,-270.70 as payment of accrued interest and upon the principal balance owing by Randolph. Of this $2,000.00 was applied upon defendant's indebtedness to the Bank and likewise was credited upon the principal balance owing on the Randolph note. Of this $270.70 in interest was received by defendant by waiver and consent of the Bank similar to that which occurred June 12, 1961.

June 21, 1962 the defendant sold (or purported to sell) the Randolph note to L. D. Eakman, by separate written instrument,

for a recited consideration of $12,528.00—the then remaining balance on the principal amount of the Randolph note. The instrument was filed of record.

June 22, 1962 L. D. Eakman assigned the Randolph note thus received to the Bank by separate instrument for the same recited consideration. The instrument was filed of record. It is to be remembered that $12,528.00 was the balance owing on the Randolph note.

July 3, 1962 for and upon written direction of defendant the Bank paid to Randolph the sum of $502.24 and to Eakman the sum of $500.00 and accordingly credited the indebtedness owed to it by the defendant with the sum of $11,525.76. (The credit on the debts of the defendant, plus the payments to Randolph and Eakman, add up to $12,528.00—balance owing on the Randolph note.))

July 3, 1962 the Bank took a renewal note (as applied to the original Randolph note in the amount of $15,660.00) from Randolph in the amount of $12,528.00. Said note was made payable to the Bank and bore interest at the rate of 6%.

Later in July, 1962 defendant paid the Bank the sum of $5,668.00 in elimination of all remaining indebtedness owed it by him.

Denying any recovery other than that specifically granted the trial court rendered judgment for plaintiff against defendant for the sum of $5,389.99, plus interest at the rate of 6% per annum from March 11, 1968 (date trial began), on the theory of defendant's liability, under computation as follows:

| | |
|---|---:|
| Payment on June 12, 1961 | $ 2,349.00 |
| Interest on above from June 12, 1961 to March 11, 1968 | 1,282.98 |
| Portion of payment on June 16, 1962 | 270.00 |
| Interest on above from June 16, 1962 to March 11, 1968 | 93.15 |
| July 3, 1962 payment to Randolph | 502.24 |
| July 3, 1962 payment to Eakman | 500.00 |
| Interest on two items next above from payment date to March 11, 1968 | 392.68 |
| Total ...............$ 5,389.99 | |

---

(Note: A check of the computation above set forth, which we have copied from information supplied on appeal, indicates a correct total would be $5,390.05. Any error is immaterial, as of trifling amount, and therefore we disregard it.)

██ Gifts of property may be completed and consummated so as to pass title upon delivery just as title may pass upon delivery pursuant to contract. Title does not pass in the case of a gift unless there be a delivery. In that respect the situation is like unto transfer of title of property pursuant to contract wherein it is agreed that title will pass upon delivery. If less quantity of property is delivered than promised—or as represented to have been delivered—the receiver takes title to no more than he has received. As to property undelivered the only remedy available to him who desired delivery is for specific performance or damages for breach of contract against him who promised delivery.

Should he who purports to deliver title to property by making a delivery—but does not succeed in delivering title because of

some impediment, such as prior lien or right, title or interest in a third party— would ordinarily become liable under provision of the parties' contract.

Even so, however, the contract would necessarily be treated as executory merely as applied to the receiver's right of title to any property delivered. In any suit between such a supplier and receiver wherein the receiver was plaintiff the defendant would be entitled to defeat his opponent's claim upon proof of want or failure of consideration to support any contractual obligation to deliver title.

See generally, Restatement of the Law, "Contracts"; § 177, "Assignment of Supposed Rights * * *"; § 175, "Warranties of an Assignor"; § 156, "Partial Assignments".

■ The same thing would be true as to a purported gift—including gift by way of a donor's assignment to a donee of the promissory note of another. Any impediment to vestiture of title, as by prior lien or right, title or interest of a third party, would—to the extent, degree, or percent of interest in the note of such third party legally inhibited—prohibit vestiture of title in the donee. As to such any claim by donee of liability on the part of the donor would be on the premise of an unfilled executory obligation, i. e. as a promise to deliver title. 27 Tex.Jur.2d, p. 149, "Gifts", § 4, "Estate or interest passed by gift."

■ We are in accord with the obvious theory under which the trial court rendered judgment for $5,389.99. Such theory was: (1) Insofar as it was within the power of the defendant to make a gift to the plaintiff, involving the Randolph note, he did make it by the assignment to plaintiff on March 7, 1961; with the result that plaintiff stood as the legal owner and holder of Randolph's obligation upon said note, subject only to rights of the Bank pursuant to the conditions of the pledge agreement entered into between the defendant and the Bank on February 7, 1961. In other words any payment made by Randolph belonged to plaintiff "subject to" the Bank's prior right (but not its obligation) to have such delivered to it by authority of the pledge agreement. (2) That it not having been within the power of the defendant to make a gift to the plaintiff of any right, title and interest in the Randolph note other than that possessed (despite his intentional or mistaken claim that what he possessed was in excess of what it actually was) any purported gift thereof was ineffective to vest title in plaintiff; and as applied to the difference between what she actually received and became a completed contract of gift, with title in her,—and as to the excess which defendant purported to give (but could not because it was beyond his authority to convey),— plaintiff was merely possessed of a right to claim that the defendant was morally obligated to her for the value of said difference. (3) That plaintiff's suit on such claim was defeated as applied to such portion of defendant's purported gift by assignment as to any interest in the Randolph note which he had not the power to convey. It was indisputably established in the record that, whether the assignment be considered as a completed transaction of gift or as a contract to make a gift, there was no consideration therefor moving from plaintiff or anyone in her behalf to defendant or anyone in his behalf. (4) That such monies as were received on the Randolph note by defendant or anyone else in his behalf or chargeable to his interest therein (other than by the Bank in its own behalf under rights secured by the pledge agreement) were received by the defendant in capacity as trustee for plaintiff, so that retention by him under claim of right amounted to a conversion of her property. (5) That as applied to plaintiff's claim against defendant for any other amount there would exist no cause of action by plaintiff under the theory of trust and/or conversion, but merely a cause of action as for specific performance or for breach of promise to perform (including any complaint because of defendant's representa-

tion in the assignment that there had been a (gift) performance completed),—which cause was defeated in view of pleading and undisputed proof of want of consideration.

Thus it is made apparent that the trial court correctly rendered judgment for plaintiff in the amount of $5,389.99 against the contention of defendant that such was not supported by any evidence; and correctly denied the greater amount for which plaintiff contended.

All points of error are overruled.

Judgment is affirmed.